UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ROBERT PHILLIP PARADA,

    Plaintiff,

v.                                                                                                      Civ. No. 16-373 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

    Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum" ("Motion") [ECF No. 18]. Having meticulously reviewed the entire record, considered the parties' arguments, and being otherwise fully advised, the Court finds that substantial evidence supports the Commissioner's decision to deny benefits for a closed period and that the proper legal standards were applied. For the following reasons, the Court will **DENY** Plaintiff's Motion.

### I. PROCEDURAL BACKGROUND

On August 20, 2008, Plaintiff applied for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"), alleging that his disability began on May 13, 2006. He based his application on the following impairments: (i) bilateral degenerative disc disease, (ii) rheumatoid arthritis affecting his knees, and (iii) chronic diverticulitis. Administrative R. ("AR") 101-04. Plaintiff's applications were initially denied on January 5, 2009 [AR 148-154], and upon reconsideration on July 31, 2009. AR 159-164. Plaintiff then filed a written request for a hearing and on May 21, 2010, Administrative Law Judge ("ALJ") Barbara Licha Perkins held a hearing in Albuquerque, New Mexico. Plaintiff testified at the

hearing and was represented by attorney Gary Martone.

On April 28, 2011, ALJ Perkins issued a partially favorable decision in which she granted Plaintiff a closed period of benefits from May 13, 2006, to January 1, 2008. *See* AR 105-123. Plaintiff requested ALJ Perkins's decision be reviewed by the Appeals Council [AR 239-240], and, on July 22, 2013, the Appeals Council remanded his case back to an ALJ for review on the issue of whether Plaintiff's medical condition had improved such that granting him only a closed period of benefits was appropriate. AR 141-46.

On January 16, 2014, ALJ Myriam Fernandez Rice held a second hearing in Albuquerque, New Mexico. Plaintiff testified at the hearing and was represented by attorney Feliz Martone. The ALJ also heard testimony from Judith Beard, an impartial vocational expert ("VE"). AR 71-100. On March 27, 2014, ALJ Fernandez Rice issued a partially favorable decision in which she upheld ALJ Perkins's decision to grant Plaintiff a closed period of benefits. *See* AR 8-28. She also found that Plaintiff "once again became disabled for supplemental security income benefits only under section 1614(a)(3)(A) of the Social Security Act beginning on his 55th birthday of December 16, 2013." AR 28.

Plaintiff requested the ALJ's decision be reviewed by the Appeals Council, and, on February 25, 2016, the Appeals Council denied his request for review. AR 1-3. Consequently, the ALJ's decision became the final decision of the Commissioner. Plaintiff timely appealed the Commissioner's decision to this Court on May 2, 2016. Pl.'s Compl., ECF No. 1.

II. **STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the ALJ's decision

becomes the final decision of the agency.[1]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  Substantial evidence does not, however, require a preponderance of the evidence.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).  "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084.  A court should

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

3

meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### III. SUMMARY OF ARGUMENTS

Plaintiff advances two arguments. His first argument focuses on the date the ALJ determined he was last insured – that being March 31, 2012. As a result of the ALJ's calculation, he argues there is an un-adjudicated period from March 31, 2012 to December 31, 2013. Pl.'s Mot. 8-9. Second, he argues that the ALJ committed reversible error in finding that awarding only a closed period of benefits was appropriate because his medical condition had not improved on January 1, 2008, such that he could return to work. *Id.* at 10-12.

The Commissioner responds by first arguing that the ALJ did use the correct date that Plaintiff was last insured. She further states that using this date is most beneficial to Plaintiff. Def.'s Resp. 4-5, ECF No. 24. Next, she argues that substantial evidence supports the ALJ's decision that Plaintiff's medical condition had improved as of January 1, 2008, and therefore he was able to work at that time. *Id.* at 5-8.

## IV. ALJ'S DECISION

On March 27, 2014, the ALJ issued a decision affirming Plaintiff's closed period of benefits ending January 1, 2008. She did, however, determine that Plaintiff once again became disabled for supplemental security income benefits beginning on December 16, 2013. AR 28. In doing so, the ALJ conducted the eight-step sequential evaluation process, as dictated by 20 C.F.R. § 404.1594, for determining whether a claimant's disability has ended. AR 13. As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2012. Moving then to the sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity as of January 1, 2008, the date that his disability had ended. AR 15. Prior to step two, the ALJ found that Plaintiff had the following medically determinable impairments: (i) degenerative joint disease of the bilateral knees, status-post right knee arthroscopy and partial meniscectomy, (ii) lateral and medial meniscal tears in the left knee, (iii) intermittent rash, (iv) osteoarthritis of the bilateral fingers, (v) diverticulosis and a history of chronic diverticulosis, (vi) hypertension, (vii) hyperlipidemia, (viii) a history of onychomycosis, status-post left great toenail removal, (ix) bilateral foraminal stenosis at L5 and slipped discs, (x) left and right subacromial bursitis, (xi) rheumatoid arthritis, and (xii) alcohol dependence. AR 15.

At step two, the ALJ concluded that, since January 1, 2008, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] To reach this conclusion, the ALJ evaluated Plaintiff's impairments under Listings 1.02A, 1.02B, 14.09, 1.04, 5.06, and 12.09. AR 16-17. The ALJ first evaluated Plaintiff's knee condition under Listing 1.02A (major

---

[2] The specific sections of the Code of Federal Regulations the ALJ referenced include: 20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926.

dysfunction of a joint(s) (due to any cause)) and found that there was no evidence to suggest that Plaintiff could not ambulate effectively and therefore found that Plaintiff did not meet the Listing. AR 16. The ALJ next evaluated Plaintiff's osteoarthritis and rheumatoid arthritis in his hands under Listing 1.02B (major dysfunction of a joint(s) (due to any cause)) and Listing 14.09 (inflammatory arthritis), and found that there was no evidence that these conditions had resulted in inability to perform fine and gross movements effectively. Therefore, Plaintiff did not meet either Listing 1.02B or Listing 14.09. AR 16.

The ALJ then evaluated Plaintiff's back condition under Listing 1.04 (disorders of the spine) and found that, since there was no evidence of nerve root compression or the spinal cord, Plaintiff did not meet the criteria for Listing 1.04. The ALJ next assessed to evaluate Plaintiff's diverticulitis under Listing 5.06 (inflammatory bowel disease) and found that there was "no evidence of obstruction of stenotic areas in the small intestine or colon requiring hospitalization for intestinal decompression or for surgery and occurring on at least two occasions at least 60 days apart within a consecutive six-month period." AR 16. Finally, the ALJ evaluated Plaintiff's alcohol dependence under Listing 12.09 (substance abuse disorders) and found that his condition did not meet the criteria of Listing 12.09. AR 17.

At step three, the ALJ concluded that medical improvement had occurred as of January 1, 2008. At step four, the ALJ determined that, as of January 1, 2008, Plaintiff's impairments at the time that he was initially found to be disabled, April 28, 2011, had decreased in medical severity such that Plaintiff had the RFC to perform a limited range of light work. The ALJ determined that this medical improvement was related to Plaintiff's ability to work because it resulted in an increase in Plaintiff's RFC. AR 17.

Proceeding to step six, the ALJ concluded that Plaintiff continued to have a severe

6

impairment or combination of impairments. A severe impairment is one that causes more than minimal limitation in the claimant's ability to perform basic work activities. AR 18. At step seven, the ALJ determined that Plaintiff had the following RFC: "[t]o perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he is unable to climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and that he must avoid concentrated exposure to excessive vibration." AR 18. Sections 404.1567(b) and 416.967(b) define light work as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (2017). In support of this RFC assessment, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." AR 19.

The ALJ then determined that, as of January 1, 2008, Plaintiff was unable to perform his past relevant work as an electrician, plumber, pool technician, cabinet builder, or roofer. AR 25. However, at step eight, the ALJ determined after considering Plaintiff's age, education, work experience, and RFC that he was able to perform a significant number of jobs in the national economy, including assembler of small products, electronics worker, and inspector/hand packager. AR 26. Therefore, the ALJ concluded that, since January 1, 2008, Plaintiff "has been

capable of making a successful adjustment to work that existed in significant numbers in the national economy." AR 27. Subsequently, the ALJ concluded that Plaintiff was not disabled under the meaning of the Social Security Act from January 1, 2008, through December 16, 2013. AR 27.[3]

## V. ANALYSIS

### A. Date Last Insured

Plaintiff begins his challenge to the ALJ's determination that he was not disabled as of January 1, 2008, by taking aim at how the ALJ calculated the date Plaintiff last met the insured status requirements. Pl.'s Mot. 8-9. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2012. AR 15. Plaintiff argues that the ALJ improperly calculated this date and that, under the controlling regulations, his date last insured should be either September 30, 2013, or December 31, 2013. Pl.'s Mot. 9. The Commissioner responds that the ALJ did use the correct date last insured and asserts that Plaintiff's argument is based on a misunderstanding of the way the agency calculates a claimant's date last insured following a prior period of disability. Def.'s Resp. 4.

In order to be eligible for Social Security benefits of any kind, including disability benefits, a claimant must be insured under the Social Security program. *See Insured Status Requirements*, Social Security, https://www.ssa.gov/oact/ProgData/insured.html (last visited June 5, 2017). The Agency determines this date based on "quarters of coverage" an individual has earned. *Id.* A quarter of coverage can also be thought of as a credit towards Social Security insured status. *Id.* An individual has disability insured status if he: (i) has earned at least 20 quarters of coverage during the last ten years, and (ii) is fully insured. *Id.*

---

[3] It is worth emphasizing that ALJ Fernandez Rice also concluded that Plaintiff again became disabled effective December 16, 2013, a decision not challenged by the Commissioner. This appeal, therefore, focuses only on the period between January 1, 2008-December 15, 2013.

The process for determining an individual's disability insured status is governed by 20 C.F.R. § 404.130 (2017). An individual must meet one of four applicable rules and be fully insured. *See id.* § 404.130(a). Only Rule I is applicable to Plaintiff's case, which provides:

> You must meet the 20/40 requirement. You are insured in a quarter for purposes of establishing a period of disability or becoming entitled to disability insurance benefits if in that quarter –
>
> (1) You are fully insured; and
> (2) You have at least 20 [quarters of coverage ("QCs")] in the 40–quarter period (see paragraph (f)[4] of this section) ending with that quarter.

§ 404.130(b). Section 404.132 governs when the period ends for determining the number of quarters of coverage an individual needs to be fully insured. It provides that for:

> [A] woman, or a man born after January 1, 1913, the period of elapsed years in § 404.110(b) used in determining the number of quarters of coverage (QCs) you need to be fully insured ends of as the earlier of –
>
> (1) The year you become age 62; or
> (2) The year in which –
>
>   (i) Your period of disability begins;
>   (ii) Your waiting period begins; or
>   (iii) You become entitled to disability insurance benefits;

§ 404.132(a).

The Court finds no error in how the ALJ applied the regulations governing Plaintiff's insured status requirements. Upon careful review of those regulations and the record, the Court is persuaded by the Commissioner's response, which in relevant part states:

---

[4] Paragraph (f) provides:

> How we determine the 40–quarter or other period. In determining the 40–quarter period or other period in paragraph (b), (c), or (d) of this section, we do not count any quarter all or part of which is in a prior period of disability established for you, unless the quarter is the first or last quarter of this period and the quarter is a QC. However, we will count all the quarters in the prior period of disability established for you if by doing so you would be entitled to benefits or the amount of the benefit would be larger.

§ 404.130(f).

> [T]he recalculation Plaintiff requests would result in a much earlier DLI. The reason the agency (and the ALJ) still used the March 31, 2013 DLI recalculation for a prior period of disability should not be made if it would harm the claimant or result in a denial of DIB. 20 C.F.R. § 404.130(f). Here, the ALJ properly used the DLI that was most beneficial to Plaintiff (i.e., the later DLI), and the DLI was calculated properly.

Def.'s Resp. 5. Notably, in reply, Plaintiff does not contest the Commissioner's explanation of the Government's reasoning but instead offers only that "[a]s a general rule, the Social Security Act is to be liberally construed in favor of applicants in order to effect the Act's remedial purpose." Pl.'s Reply 2.

Because the ALJ complied with relevant law and administrative guidance to calculate the date Plaintiff last met the insured status requirements of the Social Security Act, the Court will deny Plaintiff's first claim for relief.

### B. Medical Improvement Standard

Plaintiff's second and final challenge is directed at ALJ Fernandez Rice's decision to affirm his benefits only for the closed period of May 13, 2006 to January 1, 2008. Pl.'s Mot. 10. In doing so, the ALJ determined that Plaintiff had the following RFC: "[t]o perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he is unable to climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and that he must avoid concentrated exposure to excessive vibration." AR 18.

Plaintiff argues that the ALJ committed reversible error in finding medical improvement related to his ability to work and in the RFC finding. Pl.'s Mot. 10. Plaintiff assails the ALJ's finding that his medical condition had improved by highlighting the various evidence that the ALJ did not consider in reaching this finding. Pl.'s Mot. 10-12. Specifically, Plaintiff argues that the ALJ did not evaluate all of his impairments, and instead focused only on his abdominal problems while ignoring his knee problems. *Id.* at 10. Additionally, Plaintiff alleges that the

10

ALJ's decision to attribute significant value to Dr. Michael Finnegan's opinion was in error because Dr. Finnegan did not have access to four years of medical records. *Id.* at 10-11. Furthermore, Plaintiff contends that Dr. Finnegan's opinion was inconsistent with Plaintiff's reported activities of daily living. *Id.* at 11. Overall, Plaintiff argues that the ALJ failed to properly apply the medical improvement standard and failed to make a supportable RFC finding. *Id.* at 12.

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement on January 1, 2008, such that he could return to work. Def.'s Resp. 5. She explains that, contrary to Plaintiff's assertion, the ALJ did properly evaluate all of his medical conditions, including both his abdominal problems and his knee problems. *Id.* at 7. Furthermore, the Commissioner argues that the medical evidence and Plaintiff's reported activities of daily living support the ALJ's finding that Plaintiff was not disabled during the time in question. *Id.* at 6-8.

The medical improvement standard, as defined by 20 C.F.R. § 404.1594(b)(1) (2017), applies in closed period cases. *See Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999). As suggested by its name, a closed period case in one in which a disability claimant is determined to be disabled only for a finite period of time. *Id.* Social Security regulations define "medical improvement" as:

> [A]ny decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the] impairment(s).

§ 404.1594(b)(1).

To apply the medical improvement test, an ALJ must first compare the medical severity

of a claimant's current impairments to the severity of the impairments which were present at the time of the most recent favorable medical decision finding the claimant disabled. *See Shepherd*, 184 F.3d at 1201. The ALJ must then determine if such medical improvement is related to ability to work. *Id.* To do so, "the ALJ must reassess a claimant's RFC based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision." *Id.* Upon completion of these steps, the ALJ must compare the claimant's new RFC with the RFC that was assessed before the medical improvement occurred. *Id.* "The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence." *See id.*; *see also* § 404.1594(c)(2). Based on the law regarding the medical improvement standard, the main issue before the Court is whether Plaintiff's RFC as determined by ALJ Fernandez Rice was supported by substantial evidence.

The RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling ("SSR") 96-8P, 1996 WL 374184 (July 2, 1996). The RFC is the individual's maximum ability "to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* The RFC assessment must be based on all of the evidence in the record.[5] *Id.*

When assessing an individual's RFC, "the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). Furthermore, "the

---

[5] Evidence considered includes: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms (including pain) that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations. SSR 96-8P, 1996 WL 374184 (July 2, 1996).

RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (citing SSR 96-8P, 1996 WL 374184 (July 2, 1996)).

The record reflects that the ALJ sufficiently considered all of the relevant evidence, including evidence as it related to Plaintiff's abdominal condition and his knee conditions. The ALJ thoroughly reviewed the medical evidence, including Plaintiff's multiple abdominal surgeries and his knee condition. *See* AR 17. The ALJ considered Plaintiff's own testimony regarding his symptoms and reports of his daily activities. *See* AR 19. Importantly, Plaintiff's testimony about his knee pain contradicted other medical evidence in the record, including multiple consultative reports indicating that Plaintiff had significant range of motion in his knee joint and that he did not consistently exhibit joint instability. *See* AR 21. Plaintiff also reported his ability to perform household chores and make minor household repairs. *See* AR 24.

The ALJ further described in detail the many medical opinions she considered while evaluating Plaintiff's case. *See* AR 19-25. Her decision makes clear that, though she did take Dr. Finnegan's opinion into account, it was not the sole basis for her decision to craft Plaintiff's RFC in the fashion that she did. In total, the Court can count 26 different medical professionals, from radiologists to state consultants, whose notes and opinions the ALJ considered and discussed. Additionally, the ALJ explicitly did not adopt some of Dr. Finnegan's findings, most notably how much Plaintiff could lift and carry. The Court therefore finds no fault in the ALJ's reliance on Dr. Finnegan, because the record indicates the ALJ's RFC determination was derived from multiple sources and was supported by substantial evidence.

The ALJ's assessments of the credibility of Plaintiff and the medical professionals were

hers to make. Those assessments were satisfactorily explained, are consistent with the medical evidence in the record, and cannot be second-guessed by this Court when conducting its substantial evidence review. For these reasons, the undersigned rejects Plaintiff's assertion that the ALJ erred in determining Plaintiff's RFC and failed to support her decision with substantial evidence. Ultimately, Plaintiff's arguments amount to an invitation to this Court that it should re-weigh the relevant evidence, which it will not do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight.").

## VI. CONCLUSION

For these reasons, the undersigned finds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion be **DENIED**, the Commissioner's final decision be **AFFIRMED**, and this action be **DISMISSED**.

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE